UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:17-CV-00129-TBR

ELAURA SETTLES,   PLAINTIFF

v.

MSSC U.S., INC., et al.,   DEFENDANTS

## Memorandum Opinion

This matter comes before the Court upon motion by MSSC U.S., Inc. and Sandra Richey, (collectively, "Defendants"), for summary judgment against Plaintiff Elaura Settles, ("Settles"). [DN 17.] This matter is ripe for adjudication and, for the reasons that follow, **IT IS HEREBY ORDERED** that Defendants' motion, [DN 17], is **GRANTED**.

### A. Background

This case arises out of Settles' term of employment with Defendant MSSC U.S. Inc., ("MSSC"), from May 2012 to August 2016. [DN 17-2, at 3 (Settles Dep., p. 6).] During her approximately four-year tenure with company, which produces "stabilizer bars, coil springs, and related assemblies for automotive and off-road applications," Settles worked as a Coil Line Associate Production Worker. [DN 1, at 2; *see also* www.msscna.com.] Settles claims that during her time at MSSC, she was the victim of various discriminatory actions based upon both her sexual orientation and her race. [*Id.* at 8 (Settles Dep., p. 25).] Settles is an African American woman and is also lesbian. [DN 1, at 2.]

Settles claims that in 2013 she "filed a complaint of unwanted sexual harassment with Human Resource[s] (HR) Department regarding her sexual orientation" after "a former co-worker stated [to] her 'If I act like a man, he will treat me like a man.' [Settles] stated the

1

perpetrator was never written up or suspended for his conduct." [*Id.* at 3.] Next, Settles claims that in 2014, she lodged another complaint with HR relating to sexual orientation discrimination "because a former co-worker called and referred to her as a 'Dike' and asked her the size of her genital [sic], and [that Settles needed] to stop dressing like a male and need[ed] to put on dresses." [*Id.*] Settles indicates that the interaction led to an altercation for which "both were suspended from work for three days." [*Id.*] Settles testified in greater detail at her deposition: she indicated that the other employee involved was Travis Chambers, ("Chambers"), and that "[h]e came into the break room and I [Settles] was eating chips on my break and he walked up to me and told me to show him my penis and that I needed to be – have a dress on." [DN 17-2, at 8 (Settles Dep., p. 27).] Settles goes on: "that hurt me and I got frustrated. I didn't throw a chair at his body but I threw it across the room. And we were pulled into HR…, told them the situation, had witnesses testify to him on my behalf, that I didn't start anything, that he did…, and we were both suspended." [*Id.*]

In her Complaint, Settles next claims that in 2016, numerous MSSC employees were caught on surveillance video stealing from the company, but that "only the 'Black' employees where terminated [sic]." [DN 1, at 4.] Settles claims that she complained to HR and, two weeks later, the white employee involved was also terminated, but that HR was very angry with her. [*Id.*] Settles does not indicate that she had any involvement in this incident. Settles next claims that Defendant Sandra Richey, ("Richey"), fired her in August 2016, at which time she accused Settles of throwing keys at another employee in 2015; Settles also claims that, at her unemployment hearing, Richey accused her of throwing a coil spring at a temporary employee. [*Id.* at 5.] In her deposition, Settles explained in greater detail another incident: an on-site altercation with her ex-girlfriend on April 7, 2016. [DN 17-2, at 10 (Settles Dep., pp. 35-36).]

2

Settled testified that Elizabeth Aqouwao, ("Aqouwao"), came to the MSSC worksite and asked Settles to come outside to talk, but that Settles said no. [*Id.*] Police were called to the premises and they spoke with Settles about the incident. [*Id.* at p. 37.] Eventually, Settles was terminated from her position at MSSC in August 2016. [DN 1, at 2.] According to MSSC, Settles' termination was the culmination of numerous work-related incidents in which she was involved, ranging from derogatory behavior and language used against other employees, failing to clock out on time, the incident involving her ex-girlfriend, to multiple incidents wherein Settles allegedly threw items at other employees. Settles claims she was fired for unlawful, retaliatory reasons pertaining to her race and sexual orientation.

### B. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Moreover, "[t]he judge is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists." *Am. Guarantee and Liability Ins. Co. v. Norfolk S. Rwy. Co.*, 278 F. Supp. 3d 1025, 1037 (E.D. Tenn. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The party seeking summary judgment "may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply 'by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325). If the movant carries his or her burden here, "[t]he non-moving party…may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 47 U.S. at 586). Finally, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the non-moving party." *Id.* (internal citations and brackets omitted). This means that "[i]f the [non-moving] party fails to make a sufficient showing on an[y] essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment." *Am. Guarantee and Liability Ins. Co.*, 278 F. Supp. 3d at 1037 (citing *Celotex*, 477 U.S. 323).

## C. Discussion

### 1. Settles' Complaint

As an initial matter, the Court must examine Settles' *pro se* Complaint in order to determine what claims she has set forth. She has laid out three substantive sections under the header, "Charges," which are entitled "Violations of the Civil Rights Act of 1991," "Violation of the Tennessee Human Rights Act," and "Violations of 42 U.S.C. § 1981." [DN 1, at 6-8.] Upon review of the Complaint, and the allegations contained therein, the Court has determined that Settles has purported to make claims for wrongful termination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* (1991), the Kentucky Civil

Rights Act ("KCRA"),[1] and 42 U.S.C. § 1981. More specifically, Settles claims in her Complaint that she was discriminated against, and suffered harassment, because of her race and her sexuality, and that she was retaliated against unlawfully for the same reasons. [*See generally id.*]

## 2. Statute of Limitations

In its motion for summary judgment, Defendants first argue that Settles' claims are time-barred and should therefore be dismissed; in the alternative, Defendants argue that Settles should be compelled to at least provide proof that her Complaint was timely filed. The Court must reject this line of argument.

As Defendants explain in their instant motion, Settles' charge of discrimination, filed with the EEOC, was dismissed on May 30, 2017. [DN 1-1.] Contained in that dismissal notice was the following language: "You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost." [*Id.* (emphasis in original).] Notice of the dismissal was mailed to Settles on May 30, 2017 as well. [*Id.*] "The federal courts have strictly enforced Title VII's ninety-day statutory limit." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000). However, "[t]he Sixth Circuit has resolved that notice is *given*, and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of an RTS [right-to-sue] notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration…." *Id.*

Because Settles' RTS letter was mailed on May 30, 2017, this means that the ninety-day time limitation presumptively began to run on June 5, 2017. Accordingly, Settles was required to

---

[1] Although Settles titled the second section "Tennessee Human Rights Act," she references the KCRA thereunder, and all events which gave rise to this action occurred in Kentucky.

5

file suit no later than September 2, 2018, or ninety-five days after the letter was mailed. The Record reflects that Settles filed her Complaint with the Court on August 30, 2017. [DN 1.] Thus, her claims are not time-barred, and the Court must reject Defendants' preliminary argument, and will not require Settles to provide additional proof to this effect.

### 3. Discrimination

Moving to the substance of Settles' claims, she has, *inter alia*, alleged claims of discrimination based upon her race and sexuality under Title VII, the KCRA, and § 1981. [*See id.*] The KCRA "is similar to Title VII…and should be interpreted consistently with federal law." *Ammerman v. Bd. of Educ. Of Nicholas Cnty.*, 30 S.W.3d 793, 797-98 (Ky. 2000). Likewise, § 1981 "prohibits intentional race discrimination in the making and enforcing of contracts, *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006), and courts should analyze § 1981 claims under the "same analytical framework" as Title VII claims. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000)).

Title VII, like the KCRA, prohibits employers from discriminating "against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). However, in *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006), the Sixth Circuit expressly held that "sexual orientation is not a prohibited basis for discriminatory acts under Title VII." "Further, the Sixth Circuit, in applying Title VII precedent to the KCRA, has held that the KCRA also does not protect individuals from discrimination based on sexual orientation." *Lindsey v. Mgmt. & Training Corp.*, No. 4:17-cv-00146, 2018 WL 2943454, at *2 (W.D. Ky. Jun. 12, 2018) (citing *Pedreira v. Kentucky Baptist Homes for*

*Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009)). And of course, "as a matter of law, § 1981 only provides relief for employment discrimination where the employment decision is motivated on the basis of race rather than upon the basis of sex." *Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 720 N.D. Ohio 2008). Thus, at the outset, the Court must dismiss any claims Settles has purported to bring for sexual orientation discrimination under Title VII, the KCRA and/or § 1981. Settles has made statements in her Complaint, and provided certain testimony during her deposition, that other employees at MSSC made unsavory and lewd comments to her on the basis of her sexuality, and while the Court does not condone any such abhorrent alleged statements, the Court must still dismiss any proffered claims of sexual orientation discrimination brought under Title VII, the KCRA, and/or § 1981, as they are not cognizable in this circuit.

However, as noted above, Title VII and the KCRA, as well as § 1981 all prohibit discrimination in this sort of context based upon an individual's race. First though, the Court must distinguish between direct and circumstantial evidence in these types of cases: "Direct evidence consists of facts that, if believed, require the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," *Tennial*, 840 F.3d at 302 (citation omitted), while "[c]ircumstantial evidence…is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012) (citation omitted). Because Settles' claim involves circumstantial evidence, the Court will employ the familiar *McDonnell Douglas* burden-shifting analysis. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

In order to establish a *prima facie* case of discrimination under *McDonnell Douglas*, Settles must show that "(1) [s]he is a member of a protected class, (2) [s]he was qualified for the job and performed it satisfactorily; (3) despite [her] qualifications and performance, [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of [her] protected class." *Id.* at 727 (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). Should Settles succeed here, the burden would then shift to Defendants "to articulate some legitimate, nondiscriminatory reason" for the adverse action taken; if this happens, the burden would shift back to Settles to show that Defendants' reason is actually pretext for some unlawful discrimination. *Johnson v. Kroger Corp.*, 319 F.3d 858, 864-65 (6th Cir. 2003) (citation omitted). "A plaintiff can demonstrate pretext by showing that the employer's proffered reason for the adverse action (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016) (citations omitted).

Of course, Settles is African-American, and is therefore a member of a protected class, and the uncontroverted evidence shows that she suffered adverse action, in that she was terminated from her position at MSSC in August 2016. The crux of the issue, then, is whether she was treated differently than similarly situated nonminority employees at MSSC. Here, Settles' claim must fail. She has simply failed to adduce more than a scintilla of evidence that she was treated less favorably than similarly situated MSSC employees who did not share her status as a minority. Indeed, Settles did not attach any exhibits to her response to Defendants' instant motion, and the only evidence the Court has concerning any instances involving race

come from her deposition testimony. At that time, Settles detailed what she viewed as racial discrimination during her time at MSSC:

> Q: [Ben Fletcher, attorney for Defendants] And what – what are the facts which support your allegation of race discrimination?
>
> A: [Settles] Well, I feel like Ms. Sandy[2] was racist. It's on record. And I don't know if they have a video but I want it subpoenaed in the court if this do[es] go to court. It was several black African-American employees, as well as temps [temporary employees] that were terminated from stealing out of our break room area. A white employee named Ryan was caught stealing –
>
> Q: Let me stop you just a second. You weren't –
>
> A: No, I wasn't doing nothing.
>
> Q: -- you weren't disciplined because of that, were you?
>
> A: No, but I spoke up about the matter.
>
> Q: I understand that, but this had nothing to do with you.
>
> A: Right. But I spoke up about the matter and I felt like Ms. Sandy held that grudge against me.
>
> ***
>
> Q: And any other facts that you have would support your allegation of race discrimination by MSSC?
>
> A: Well, there was a guy, Tim Smith, and Cory. I can't think of Cory's [last] name. They was [sic] the main two with complaints, which they're African American descents [sic], and they don't work there anymore. They left MSSC, as well.

[DN 17-2, at 9 (Settles Dep., pp. 29-32).] Apart from this exchange, Settles testified that, when Richey terminated her employment with MSSC, she again discussed with Richey the allegedly unfair treatment some African American MSSC employees had received when they were caught stealing as compared with at least one Caucasian employee who was caught doing the same; at that time Settles testified that Richey asked, "and you accuse me of being a racist?" [*Id.* at 10

---

[2] Defendant Sandy Richey, Human Resources Manager at MSSC.

(Settles Dep., p. 33).] Aside from this, the Court cannot find any other instances of allegedly discriminatory actions that touch upon the issue of race.

Upon review, the above exchange between counsel for Defendants and Settles does not rise to a level sufficient to establish a *prima facie* case of racial discrimination. The primary incident at issue did not involve Settles at all, and Settles has produced no evidence tending to show that she was discriminated against in any way as a result of her race, only proffering tenuous testimony concerning her hunch that Richey is racist and/or that Richey held a grudge against her. This falls well short of establishing a racial discrimination claim and the Court must therefore dismiss Settles' discrimination claim under Title VII, the KCRA, and § 1981. Additionally, to the extent that Settles has attempted to assert claims of race discrimination on behalf of other African American MSSC employees, her claim must still fail for lack of standing. *See Preston v. Good Nature Café*, 33 F. App'x 704 (5th Cir. 2002) (holding that the plaintiff lacked standing to assert a Title VII claim on behalf of allegedly injured third parties).

However, even assuming that Settles has established a *prima facie* case of race discrimination, under the *McDonnell Douglas* burden-shifting framework, Defendants have proffered a legitimate, nondiscriminatory reason for Settles' termination that Settles has failed to rebut. Specifically, Defendants have directed the Court's attention to numerous workplace infractions committed by Settles during her tenure at MSSC which satisfy Defendants' burden under *McDonnell Douglas*. Settles was asked about these incidents during her deposition. First, she was asked about an incident which occurred in April 2016, about four months before she was terminated, when her ex-girlfriend, Aqouwao, came to MSSC and tried to gain access to the plant. [DN 17-2, at 10 (Settles Dep., pp. 35-36).] Settles testified that she did not believe Aqouwao was there to harm her, but the police were called to MSSC concerning the incident.

[*Id.* at 10-11 (Settles Dep., pp. 36-37).] Next, Settles testified about the 2014 incident between herself and Chambers. [*Id.* at 8 (Settles Dep., pp. 27-28).] According to Settles, Chambers entered the breakroom at MSSC where Settles was having lunch, and asked her to show him her penis, apparently in reference to Settles being a lesbian. [*Id.*] Chambers' comment upset Settles and she threw a chair across the breakroom. [*Id.*] Chambers and Settles were both suspended. [*Id.*] Settles also testified that she had been disciplined for attendance issues in the months preceding her termination. [*Id.* at 13 (Settles Dep., pp. 48-49).] Another time in 2013, Settles was given a three-day suspension for failing to clock out when she was sent home early. [*Id.* at 14 (Settles Dep., p. 52).][3]

In her response, Settles does not specifically address these incidents, or otherwise make specific arguments concerning pretext. As close as she comes to doing so is when she states the following: "[a]dditionally, the Defendants' attempted to disguise their discriminatory behavior under the cloak of MSSC US INC Departmental Policy and Evaluation. Defendants undertook this activity with malicious intent and with the sole purpose of violating Plaintiff's constitutional and civil rights." [DN 18, at 8.] Settles does not specify what she means by "Departmental Policy and Evaluation," nor does she point to specific portions therein, explain what they mean, how they were used, how they did or did not apply to her, or provide any other information regarding pretext. Accordingly, the Court must dismiss Settles' claim for race discrimination.

### 4. Harassment/Hostile Work Environment

As noted above, any claim Settles alleged for sexual orientation-based harassment in the workplace is not cognizable under Title VII or the KCRA. *See Vickers*, 453 F.3d at 762 ("sexual orientation is not a prohibited basis for discriminatory acts under Title VII."); *see also Pedreira*

---

[3] MSSC attached as exhibits extensive documentation concerning other alleged incidents involving Settles, wherein she allegedly disrespected and cursed at other employees, but Settles largely denied that most of these incidents occurred in her deposition testimony.

*v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009) ("the KCRA does not prohibit discriminatory acts based on an employee's sexual orientation.").[4]

Likewise, construing Settles' *pro se* Complaint broadly for purposes of determining what claims she has alleged, the Court finds that, to the extent she has alleged a claim for harassment/hostile work environment based upon her race, this claim must fail. To prove that she was subjected to a hostile work environment in violation of Title VII, Settles must show the following: "(1) [s]he belongs to a protected group; (2) [s]he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment and (5) [D]efendant[s] knew or should have known about the harassment and failed to take action." *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1078-79 (6th Cir. 1999). In order for harassment to affect a "term, condition or privilege of employment," it must be "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create[] an abusive working environment." *Id.* at 1079 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). Essentially, Settles' "evidence must be sufficient to show that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected [her] ability to do…her job." *Id.* (citing *Erebia v. Chrysler Plastic Prods. Corp.*, 772 F.2d 1250, 1256 (6th Cir. 1985)).

Settles has failed to adduce any evidence which would tend to show that she was personally subjected to any sort of unwelcome harassment based upon her race, whether severe, pervasive, or otherwise. The most concrete example she provided in her deposition testimony relates to *other* African American employees of MSSC who received allegedly unfair treatment

---

[4] This Court's sister court in the Eastern District of Tennessee recently confronted a similar issue, and explained that "[t]o the extent that [a] plaintiff's retaliation claim is based on [a] complaint of harassment due to…sexual orientation, [that] plaintiff fails to state a viable claim for relief under controlling Sixth Circuit and Supreme Court authority. *Underwood v. Dynamic Sec., Inc.*, No. 3:18-cv-017, 2018 WL 3029257, at *4 (E.D. Tenn. Jun. 18, 2018).

when they were terminated after being caught stealing on camera. [DN 17-2, at 9 (Settles Dep., pp. 29-32).] Other than this, the Court cannot find any specific examples wherein Settles has even alleged to have been harassed because of her race, much less any concrete evidence of the same. There is Settles' deposition testimony regarding her suspicion that Richey was racist and held a grudge against her, but no corroborating evidence has been adduced. Accordingly, this claim must be dismissed.

### 5. Retaliation

Finally, there is Settles' claim for retaliation. "Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014) (citing 42 U.S.C. § 2000e-3(a)). Relatedly, "[t]he opposition clause of Title VII makes it 'unlawful…for an employer to discriminate against any…employe[e]…because he [or she] has opposed any practice made…unlawful…by this subchapter.'" *Id.* (quoting 42 U.S.C. § 2000e-3(a)). "The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Id.* at 730 (citing *Trujillo v. Henniges Auto. Sealing Sys. N. Am.*, 495 F. App'x 651, 655 (6th Cir. 2012)). Indeed, in *Trujillo*, the Sixth Circuit noted the following: "[w]e have repeatedly held that complaints to human resources personnel regarding potential violations of Title VII constitute protected activity for purposes of establishing a prima facie case of retaliation." *Trujillo*, 495 F. App'x at 655.

Consistent with Sixth Circuit precedent regarding Title VII discrimination claims, "a Title VII retaliation claim can be established 'either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation.'" *Laster*, 746 F.3d at 730 (quoting *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 538 (6th Cir.

2008)). Because Settles has done the latter in this case, the Court will examine her retaliation claims under the *McDonnell Douglas* burden-shifting analysis.

"The elements of a retaliation claim are similar but distinct from those of a discrimination claim. To establish a *prima facie* case of retaliation under Title VII, [a] [p]laintiff must demonstrate" four things: that "(1) [s]he engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." As with a Title VII discrimination claim, under *McDonnell Douglas*, the plaintiff bears the burden of establishing the four above elements; if successful, the burden shifts to the defendant employer "to articulate some legitimate, nondiscriminatory reason" for the adverse action it took; if done, the burden shifts back to the plaintiff to show that the employer's reason is actually pretext for some unlawful discrimination. *Johnson*, 319 F.3d at 864-65.

Here, the Court finds that Settles' retaliation claims must be dismissed. As with her purported discrimination and harassment claims relating to her sexual orientation, the Court notes that such allegations do not constitute cognizable claims under Title VII, the KCRA, or § 1981, and so they must be dismissed at the outset. *See Vickers*, 453 F.3d at 762.

Additionally, Settles' failure to adduce any evidence directed at the specific question of retaliation mandates the dismissal of her claim for retaliation relating to her race. While Settles posited that she felt as though Richey was racist and held a grudge against her, and that Richey was the individual who actually terminated Settles' employment with MSSC, Settles failed to produce any evidence as to how Richey was supposedly racist, nor did Settles show how those allegedly racist tendencies bled over into the termination decision, nor has she shown exactly

what the retaliation would have been for. As close as Settles comes to proffering such an explanation is in a section of her deposition testimony wherein she indicates that she was the only African American employee to speak up about African American employees being punished more harshly for being caught on camera stealing from the company, as a Caucasian employee who was caught doing the same was allegedly not terminated immediately. [DN 17-2, at 9 (Settles Dep., 29-30).] Settles then admitted that the Caucasian employee was later fired because of the theft incident. However, Settles has not produced any evidence concerning this event, Richey's part in it, which employees were fired and when, nor exactly how the Caucasian employee was involved. In essence, apart from her generalized testimony concerning perceived mistreatment, the Court has not found any evidence of actual retaliation by Richey, or anyone else. And Settles' response to Defendants' instant motion provides only the following explanation:

> Plaintiff was subjected to retaliation and discrimination that led to her dismissal from the company because she had filed sexual harassment complaint(s) and inquire[d] about the termination of African American male employee who was terminated from his job [sic]. The African American male and Caucasian male employees were allegedly seen on a company surveillance camera stealing from the company; [t]he African American male was terminated from his job and the Caucasian employee was allow[ed] to keep his job.

[DN 18, at 7-8.] Of course, Settles admitted in her deposition that the Caucasian employee was terminated later, [DN 17-2, at 9 (Settles Dep., p. 30)], but even apart from this, Settles has attached no corroborating evidence to her response which would tend to support the above-quoted allegations, nor how any retaliatory motives ever pertained to her termination. Without more, the Court is left to conclude that Defendants have successfully shown "that there is an absence of evidence to support [Settles'] case," *Norfolk S. Rwy.*, 278 F. Supp. 3d at 1036, and that Settles has failed to "set forth specific facts showing that there is a genuine issue for trial,"

*Moldowan*, 587 F.3d at 374, as Rule 56 requires. Accordingly, the Court must grant Defendants' motion in its entirety.

### D. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Defendants' motion [DN 17] is **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc: Counsel of record

   Elaura Settles, *pro se* plaintiff